**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **DEACONESS HOSPITAL LLC,** *et al.***,** | : | **Case No. 1:09-CV-709** |
| **Appellants,** | : | |
| | : | **JUDGE KATHLEEN O'MALLEY** |
| **v.** | : | |
| **NOUR MANAGEMENT COMPANY,** *et al.***,** | : | **MEMORANDUM & ORDER** |
| **Appellees.** | : | |

Before the Court is an objection to a bankruptcy court order denying the retroactive payment of certain management fees, filed by Nour Management Company ("Nour"). (Doc. 1.)[1] Nour has filed a brief in support of its objections (Doc. 12), and the United States Trustee ("the Trustee") has filed a brief in opposition to Nour's objection (Doc. 14). Nour did not file a reply brief. Accordingly, Nour's Objection is ripe for adjudication. For the following reasons, Nour's objections are **OVERRULED**.

## I. PROCEDURAL HISTORY

On November 21, 2003, Deaconess Hospital LLC ("Deaconess") voluntarily filed for bankruptcy under Chapter 11 of the United States Bankruptcy Code. (United States Bankruptcy Court for the Northern District of Ohio Case No. 03-25461 ("Bankr.") Doc. 1.) Deaconess had owned and operated a hospital ("Deaconess Hospital") along with two other entities, Pearlview Square, Inc. and Indoga, Inc., both of which also filed for bankruptcy on or about November 23, 2003. The bankruptcy filing of all

---

[1] Although captioned "Appellee," Nour is the appellant and the Trustee is the appellee for purposes of this motion. As indicated in the case caption, an appeal was also taken by Deaconess Hospital, but the Trustee filed a motion to dismiss that appeal on December 28, 2009 (Doc. 13). That motion was not opposed, and the Court granted it on March 23, 2010.

three companies (collectively, "the Debtors in Possession") was consolidated into the present action. (Bankr. Doc. 13.)

On November 21, 2003, the Debtors in Possession entered into a contract with Nour to provide post-petition management services to Deaconess Hospital. (Doc. 11 at 3.) A single individual, George G. Saad, M.D., owned and managed both Nour and each of the Debtors in Possession. (Docs. 11 at 2-3, 14 at 3.)[2]

On May 25, 2004, Nour filed a motion requesting bankruptcy court approval of management fees totaling $84,000, which were incurred post-petition between November 21, 2003 and May 7, 2004. (Bankr. Doc. 458). Deaconess also filed a motion to pay Nour for post-petition management services provided after May 7, 2004 in the amount of $5,000 a week. (Bankr. Doc. 463). The Trustee, Official Committee of Unsecured Creditors, GE HFS Holdings, Inc, and Bank One, N.A. objected to both motions of Nour and Deaconess. (Bankr. Docs. 498, 508, 520, 521.) Nour and Deaconess also filed subsequent reply briefs. (Bankr. Docs. 518, 522.)

On July 22, 2004, after an evidentiary hearing (*see* Bankr. Docs. 594, 595), the bankruptcy court denied both motions (Bankr. Doc. 589, 590).[3]

On July 30, 2004, Deaconess filed a notice of appeal of the order denying both its motion to pay Nour for services rendered after May 7, 2004 and Nour's motion for management fees through May 7, 2004. (Bankr. Doc. 610). On August 6, 2004, Nour filed a notice of cross-appeal of the order denying its motion for management fees. (Bankr. Doc. 624).[4]

---

[2] The Court has carefully reviewed every filing in the bankruptcy court to which the parties have cited, but also relies upon any unopposed factual representations made by either party so long as such representations are not inconsistent with those citations.

[3] Both the Trustee and Nour reference, but do not cite, post-hearing briefing. (*See* Bankr. Docs. 524, 525, 532, 535, 536.)

[4] Pursuant to Fed. R. Bankr. P. 8001, the United States Trustee and GE HFS Holdings, Inc. elected to have the appeals heard by this Court. On August 31, 2004, the Bankruptcy Appellate Panel

On November 27, 2009, Nour filed a brief in support of its appeal. (Doc. 11.) On December 28, 2009, the Trustee filed a brief in opposition to Nour's appeal. (Doc. 14.) That same day, the Trustee moved to dismiss Deaconess' appeal (Doc. 13), which the Court granted on March 23, 2010.

## II. FACTUAL BACKGROUND

Prior to the filing of the bankruptcy petition at issue in this litigation, Nour provided management services to the current Debtors in Possession. For the two years leading up to the petition, Nour was not paid for these services. (Bankr. Doc. 594 at 34:15-35:5.) After the Debtors in Possession filed for Chapter 11 bankruptcy protection, they again entered into an agreement with Nour to provide management services post-petition, although it is unclear from the record whether these were similar services to the ones that Nour had been providing pre-petition.[5] The Debtors in Possession (owned and managed by Dr. Saad) agreed to pay Nour (also owned and managed by Dr. Saad) $3500 per week for these services. (Doc. 11 at 3.)[6]

These fees were never paid, and on May 25, 2004, Nour filed the motion that is the subject of the current appeal, seeking $84,000 in post-petition management fees. (Bankr. Doc. 458.) On July 22, 2004, the bankruptcy court ruled against Nour, concluding Nour could not show that it was entitled to management fees under the law applicable to transactions outside the ordinary course of business.

---

entered an order transferring the appeals to this Court. (Bankr. Doc. No. 683). This appeal was not docketed until March 30, 2009. (Doc. 1.)

[5] Nour notes that it initially charged $100,000 per month for its pre-petition management services and later reduced those fees to $50,000 per month. (Doc. 11 at 2-3.) Without context, however, these numbers are not relevant. For example, it is unclear why Nour reduced its fees or whether Nour provided the same services for $50,000 a month that it previously had provided for $100,000 a month. Just as importantly, there is no reason to assume that those numbers represented market value for such services, given that Dr. Saad sat on both sides of the transaction.

[6] Nour cites Bankr. Doc. 594 at 36 in support of that proposition, but neither this page, nor any of the immediately surrounding pages, seem to provide such support. Nevertheless, as previously stated, the Court will adopt the unopposed facts articulated by the parties to the extent that those facts are not contradicted by the portions of the record to which the parties have pointed the Court.

3

On appeal, Nour challenges what it calls "[the bankruptcy court's holding t]hat the management agreement between the Debtors-in-Possession and Nour was not incurred in the ordinary course of business . . . ." (Doc. 11 at 5; *see also id*. ("The pivotal question in this matter is whether the transaction between the Debtors-in-Possession and Nour was within the ordinary course of business.").) In other words, Nour concedes that it is not entitled to payment if the transaction was *not* entered into in the ordinary course of business. It argues, however, that the bankruptcy court applied the wrong legal standard because it either assumed or found a fact – i.e., that the transaction was outside the ordinary course of business – that was not accurate.[7]

### III. STANDARD OF REVIEW

A district court should review a bankruptcy court's order under familiar appellate standards:

> The bankruptcy court's findings of fact are reviewed for clear error. Conclusions of law made by the bankruptcy court are reviewed de novo. Equitable determinations made by bankruptcy courts are reviewed for an abuse of discretion.

*LPP Mortg., Ltd. v. Brinley*, 547 F.3d 643, 647 (6th Cir. 2008) (citations omitted). Whether a transaction was undertaken in the "ordinary course of business" is considered an issue of fact. *In re Cook & Sons Mining, Inc.*, Case No. 05-19, 2005 U.S. Dist. LEXIS 21615, at *11 (E.D. Ky. Sept. 28, 2005) (citing *In re Cedar Tide Corp.*, 859 F.2d 1127, 1133 (2nd Cir. 1988)); *see also Sigma Micro Corp. v. Healthcentral.com*, 504 F.3d 775, 790 (9th Cir. 2007).

---

[7] Nour asserts, without citation, that this Court should consider this to be an issue of law. (Doc. 11 at 5.) When discussing whether a transaction was in the ordinary course of business under a different provision of the bankruptcy code than the one at issue here, however, the Sixth Circuit stated:

> Because there is no readily applicable test of what constitutes an "ordinary course of business," this court must engage in a factual analysis of "the business practices which were unique to the particular parties under consideration."

*In re Industrial Metal Fabricators*, 902 F.2d 33 (6th Cir. 1990). This Court is persuaded, accordingly, like those courts cited below, that it is correct to characterize this issue as a factual one and to employ a "clearly erroneous" standard of review to it.

4

## IV. ANALYSIS

The core problem for Nour is that it agreed previously that the above transaction occurred outside the normal course of business. (Bankr. Doc. 589 at 7 ("The Parties agree that the transaction at issue is outside of the ordinary course [of business]."); *cf.* Bankr. Doc. 594 at 21 ("THE COURT: . . . . [T]he Debtor is taking the position that this is other than in the ordinary course of business, is that correct? COUNSEL FOR THE DEBTORS IN POSSESSION: If this were in the ordinary course of business, Your Honor, we wouldn't be here and we would have made payments to Nour. . . . So in that context, yes, this is out of the ordinary course.").) The trustee argues that Nour is foreclosed from arguing otherwise on appeal (Doc. 14 at 20), and Nour did not file a reply to disagree.

The Court cannot disagree either: for the Court to evaluate whether this transaction occurred outside the ordinary course of business would require the Court to engage in a fact-intensive analysis that was never presented to the bankruptcy court in the first instance. This would be inappropriate: the Court cannot say, for example, what facts would have been elicited before the bankruptcy court relating to this inquiry had the issue been presented there.[8] Appellate review would be particularly inappropriate

---

[8] For the sake of completeness, the Court observes that Nour's reply briefing before the bankruptcy court asserts that the management agreement in question was within the ordinary course of business (*see* Bankr. Doc. 522 at 1-3), but this does not alter the present analysis. First, Nour did not object to the characterization of the transaction as outside the ordinary course of business by the Debtors in Possession during the bankruptcy court hearing on this matter, which robbed the bankruptcy court of an opportunity to perform initial fact-finding on this issue and, accordingly, constitutes waiver of appellate review. Second, Nour's post-hearing brief, concludes "the application of 11 U.S.C. § 363(b)(1) [, which applies to transactions outside the ordinary course of business] supports Nour's motion" and makes no explicit argument that the transaction was within the ordinary course of business. (Bankr. Doc. 524 at 4.) Third, even if Nour did not waive the issue before the bankruptcy court, the bankruptcy court did not err by crediting the representation of the Debtors in Possession over the argument made by Nour. This is particularly so because, in the usual situation where the Debtors in Possession are not owned by the same individual who is also seeking payment, one would expect the Debtors in Possession to know what was and was not within the ordinary course of *their* business; a typical vendor would have no such first-hand knowledge. Finally, Nour has not argued that its bankruptcy court reply brief preserves appellate review, and it is not appropriate for a court performing an appellate function to rule in favor of a party only after searching the record for evidence a party did not cite in support of an argument that the party did not make.

5

in this case because, again, Nour does not take issue with the Trustee's argument that it has waived such review.[9]

---

[9] It seems unlikely that Nour could show that this transaction was in the ordinary course of business in any event. Courts usually employ a two-part test to determine whether a transaction is undertaken within the ordinary course of business. *Cohen v. KDC Fin. Servs.*, 219 B.R. 219, 222 (Bankr. N.D. Ohio 1998) (citations omitted); *see also In re Roth American, Inc.*, 975 F.2d 949, 952-54 (3d Cir. 1992). As one court explained:

> In the first part of the test, the "vertical dimension" test, the Court analyzes the transaction "from the vantage point of a hypothetical creditor and inquires whether the transaction subjects a creditor to economic risks of a nature different from those he accepted" when he initially contracted with the Debtor. In the second part of the analysis, the "horizontal dimension" test, the Court must determine "whether the postpetition transaction is of a type that other similar businesses would engage in as ordinary business." Under this two-part analysis, "the touchstone of 'ordinariness' is thus the interested parties' reasonable expectations of what transactions the debtor-in-possession is likely to enter in the course of its business."

*Cohen*, 219 B.R. at 222.

Nour's brief, however, is directed at only the vertical dimension, and it's claim in passing that the horizontal dimension "is only applicable . . . during the ninety (90) day preference period . . . ." (Doc. 11 at 9 n.1) is not correct, *see Cohen*, 219 B.R. at 222 (applying the test outside this context); *United States ex rel. Harrison v. Estate of Deutscher*, 115 B.R. 592, 598 (M.D. Tenn. 1990) (same). Even assuming Nour could meet the first part of the test, a questionable proposition, Nour implicitly concedes that it cannot meet the second. The second part of the test, indeed, would have required Nour to submit evidence to the bankruptcy court indicating that other businesses similar to Deaconess Hospital would have entered into transactions similar to the one at issue here, *see id.*, which Nour did not attempt to do.

So, too, to the extent that the Sixth Circuit does not seem to have ever mandated any particular test for determining whether a transaction is within the ordinary course of business, the Court notes that "[a] good case can be made for the proposition that ordinary course includes only those payments of ordinary day-to-day operating expenses that, while necessary, are relatively insignificant." *Cohen*, 219 B.R. at 222 (citation omitted). Based on the record presented to it by Nour, the transactions at issue fail this "common-sense" approach: Nour has not even attempted to persuade this Court that these transactions were necessary to sustain Deaconess Hospital. The Court, indeed, is puzzled by what Nour *does* try to argue, which is that the "the post-petition conduct of the Debtors-in-Possession in retaining Nour to provide management services was <u>exactly</u> the same as it was pre-petition." (Doc. 11 at 11) (emphasis in original). Standing alone, this is not particularly probative: pre-petition, Deaconess Hospital was treating patients, very shortly after bankruptcy, it was not. The Court does not presume, absent supporting evidence, that any particular service required by Deaconess Hospital while it was treating patients was still required after it was no longer doing so.

## V. CONCLUSION

For the aforementioned reasons, Nour's Objections to the bankruptcy court's determinations (Doc. 1) are **OVERRULED**.

**IT IS SO ORDERED.**

<u>s/Kathleen M. O'Malley</u>
**KATHLEEN McDONALD O'MALLEY
UNITED STATES DISTRICT JUDGE**

**Dated: March 24, 2010**